# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 14, 2010

## JONATHAN K. PRICE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F63728     David Bragg, Judge**

---

**No. M2010-00242-CCA-R3-PC - Filed May 4, 2011**

---

On October 11, 2006, the petitioner, Jonathan K. Price, pleaded guilty to aggravated burglary, solicitation of a minor, and two counts of statutory rape. He received a negotiated sentence of six years on probation. The petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel, and the post-conviction court denied relief. On appeal, the petitioner argues that trial counsel provided ineffective assistance, and thus, he did not enter his guilty pleas knowingly, intelligently, and voluntarily. Following our review of the record, the parties' briefs, and applicable law, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Guy R. Dotson, Jr., Murfreesboro, Tennessee, for the appellant, Jonathan K. Price.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Jude Santana, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

*Guilty Plea*

A Rutherford County grand jury indicted the petitioner, Jonathan K. Price, in a ten-count sealed indictment. On July 10, 2006, the petitioner pleaded guilty to solicitation of a minor, aggravated burglary, and two counts of statutory rape. At the guilty plea hearing, the

state submitted that it would have proved the following facts as stated in this court's opinion on direct appeal, had the matter proceeded to trial:

[T]he facts of the case are that approximately [May 5, 2004], the minor victim, who was 17 years old at the time, was at the [petitioner]'s house. According to her, the [petitioner] asked her to have sex with him at that point on that day. [Those] would be the facts for the solicitation. It was prior to the bringing of this indictment, and [the [petitioner]] was more than ten years older than her at the time. His birthday is [November 3, 1973], and the victim was 17.

On the other incidents on [May 7, 2004], the victim, also 17 years of age, was at her home alone. Her parents were not there. The [petitioner] came into the residence without permission from the owners of the residence. And the victim had just taken a shower, was wrapped in a towel. There [were] differences between-she says that he took the towel off of her and had sex with her and mentioned something about if she wanted to have a quickie.

Initially, [the petitioner] said that he was never in the residence and that nothing had happened. However, there was a DNA sample taken pursuant to a search warrant, and he was found to be a match of the DNA that was found in her room on the bed where she said that the sex acts took place.

The victim has never denied the sexual acts. The [petitioner] had denied them but at this point is going to plead guilty to two counts of statutory rape. There was an evaluation done. The victim in this case had severe brain injury from an accident in 2000. There are a lot of medical records probably in her court file as well as our files documenting the injury. There is some discrepancy between doctors as far as whether or not she could have consented based on that injury. One doctor that the [petitioner] has contacted from Vanderbilt says in a report that he felt she was competent to consent, and then her doctors say that there are reasons to believe she was not competent to consent.

I've talked to the victim this morning, and what they would like to do-there were actually-I believe there were two instances, one of oral sex or digital sex and one of vaginal sex with the [petitioner], constituting the two acts.

*Jonathan Keith Price v. State*, M2007-02434-CCA-R3-PC, 2008 WL 4414739, at * 2 (Tenn. Crim. App., at Nashville, Sept. 29, 2008). On October 31, 2006, the petitioner moved the trial court for leave to withdraw his guilty pleas, and the trial court denied the motion. The

petitioner appealed the trial court's denial, and this court affirmed the judgments of the trial court. *Id*. at *1.

*Post-Conviction*

On September 30, 2009, the petitioner filed a petition for post-conviction relief. The post-conviction court held a hearing on the petition for post-conviction relief on December 18, 2009. At the hearing, the parties presented the following evidence:

Trial counsel testified that the petitioner retained him in 2004 before the state obtained the search warrant and filed charges against him. He discussed the facts of the case with the petitioner and advised the petitioner of the possible charges that the state could file against him. Trial counsel and the petitioner also discussed how the petitioner should handle the search warrant. They were not certain whether the state would charge the petitioner, and they had not negotiated a plea at that time. Trial counsel said that he began negotiating the petitioner's case with the state before the first "discussion date," and the state made their first offer on the petitioner's "plea day."

At the time of the offer, the parties had filed their discovery, and trial counsel had written summaries of the witnesses' statements. The discovery also contained a DVD recording of the detective's interview with the victim. Trial counsel reviewed the discovery that he had received with the petitioner. While reviewing the discovery and the ten-count indictment, trial counsel advised the petitioner of the range of punishment for the offenses.

Trial counsel testified that he also advised the petitioner "that separate penetrations could constitute separate charges, which is what [he] believed to be the law at the time." He said that the state had "alternative theories. It was kind of a complicated indictment in that some of the counts were based on [the state] saying it was not consensual, and others having to do with mental defect." Trial counsel said that the petitioner advised him that the rapes occurred on one date only. Trial counsel did not recall the discovery alleging oral sex, but he did recall allegations of "digital penetration and penile/vaginal sex." Trial counsel did not review the transcript of the petitioner's guilty plea hearing. He stated that he remembered the guilty plea hearing "in principle" but not verbatim. Trial counsel did not recall whether the state mentioned oral sex during the plea hearing. Trial counsel said that he advised the petitioner of what he believed to be the law, "which [was] that if there were separate and distinct penetrations it could support independent counts" but did not discuss specific cases with the petitioner.

Trial counsel testified that he and the petitioner also discussed the aggravated burglary charge, and stated that he "believed that the burglary charge was one of the weakest counts in the indictment." He explained the issue with the aggravated burglary count was whether

the petitioner's initial entry was unlawful. He said that he and the petitioner discussed the state's strengths and weaknesses for each count of the indictment.

Trial counsel recalled that two counts of the indictment cited the statute for aggravated rape; however, the facts alleged in the indictment did not support that charge. He stated that he advised the petitioner that on the face of the indictment it appeared that the state had charged him with two counts of aggravated rape and two counts of rape, but there was no factual basis for the charges of aggravated rape. Trial counsel also discussed concurrent and consecutive sentencing with the petitioner and stated that he thought the petitioner "understood his exposure."

During the plea negotiations, the state conveyed an offer that involved a suspended sentence. Trial counsel said that the suspended sentence would have been a permanent conviction that appeared on the petitioner's record. Trial counsel obtained an expert regarding the victim's mental status and filed motions based upon the expert's report. On the date of the motion hearing, the state made another plea offer which the petitioner accepted. Trial counsel said that during the plea negotiations he made counter offers for the petitioner to serve his sentences on probation under Tennessee Code Annotated section 40-35-313. Trial counsel stated that the closest that the state came to his counter offer was "to allow [the petitioner] to plead [to] the charges that were [Tennessee Code Annotated section 40-35-313] eligible, and allow [for a] hearing" before the trial court. Trial counsel further stated that he made a counter offer that involved the petitioner "not pleading on the burglary charge and . . . one count of statutory rape, but the state rejected that offer." He stated that during the negotiations, he "never counter[]offered anything that was going to result in a permanent conviction." Trial counsel said that he conveyed the state's offers to the petitioner and discussed their counter offers with the petitioner. Trial counsel believed that the petitioner understood their discussion about the plea agreement and said that he would not have allowed the petitioner to plead guilty if the petitioner did not understand the agreement. When asked whether he believed there was a factual basis for the plea agreement, trial counsel answered, "[I]t's a client decision. [A]ll along [the petitioner] had told me that he believed [the victim] was of age. And so, . . . he pled best interest. I conveyed the offer and I explained the rights."

Trial counsel testified that the facts that the petitioner had told him did not constitute all of the offenses to which he pleaded guilty. Trial counsel said that he had "misgivings . . . about the burglary charge" because there was an issue about whether the victim had the capacity to consent. He also said that regarding the rape count, he did not believe that the state's theory that the victim did not consent was well supported by the facts. He recalled that the state had an expert who was going to testify that the victim had head injuries that caused cognitive deficiencies; however, the defense expert was going to testify that the victim could have consented. Trial counsel did not review the report that the state's expert

-4-

prepared for trial. However, trial counsel said that he reviewed the victim's treatment records and stated that his opinion was that the victim's injuries did not rise to a level that affected her capacity to consent.

On cross-examination, trial counsel testified that he had been an attorney since 1996, and he had worked on "quite a few sex offender cases." He stated that he was familiar with the law concerning sex offender cases. The petitioner's sister-in-law was in law school during the petitioner's trial, but trial counsel said that he was unaware that she advised the petitioner. Trial counsel said that he and the petitioner's sister-in-law discussed the petitioner's case. According to trial counsel, the petitioner's sister-in-law told him that "she had avoided discussing the facts of the case with [the petitioner.]" Trial counsel primarily spoke with the petitioner's sister-in-law after the sentencing hearing and after a probation violation warrant had been served. Trial counsel said that he was concerned because the deadline for filing the petitioner's notice of appeal was approaching; however, the petitioner's sister-in-law informed him that another attorney would be taking over the case. Trial counsel testified that between the date of the petitioner's plea and the sentencing hearing, he filed a motion to set aside the petitioner's plea.

Trial counsel was aware that the petitioner initially claimed that he never entered the victim's home. He stated that the police found the defendant's DNA on a pillowcase in the home, which showed that he was in the victim's home. Trial counsel said that the state had "significant medical records" that documented the victim's brain injury and that the records showed that the victim almost died of the injury. Trial counsel said that the victim's parents were not home during the incident and had not given the petitioner permission to enter their home; however, "they were friends and had been in each other's homes before that day." Trial counsel stated that he and the petitioner did not discuss any previous sexual encounters between the victim and the petitioner.

Trial counsel recalled going through the "normal plea colloquy" with the petitioner on the day of the plea. He also recalled the trial court asking the petitioner if he wanted to waive his rights. Trial counsel did not remember whether the petitioner said that he understood the law concerning the age for statutory rape. Trial counsel did remember, however, that the trial judge asked the petitioner if he understood that he would decide whether the petitioner received a suspended sentence at the sentencing hearing. He also remembered the trial judge telling the petitioner that the statutory rape law had changed and asking the petitioner whether he discussed those changes with trial counsel. Trial counsel stated that his recollection was that the trial judge also informed the petitioner during the plea hearing that he would decide whether the court would require him to register as a sex offender at his sentencing hearing.

When asked whether he should have done anything differently in representing the petitioner, trial counsel answered, "In light of where we landed now, I wish things had gone differently. [B]ut in terms of how the case was handled, . . . part of me wishes we tried the case, but that's hindsight." He said that it was the petitioner's decision whether to try the case or not. Trial counsel stated that the state had a large amount of material regarding the victim's mental condition. Trial counsel further stated that the petitioner asked him to file a motion to withdraw his guilty plea before the sentencing hearing and before he violated his probation.

On redirect examination, trial counsel testified that he advised the petitioner that the judge would decide whether he received probation and, if he received probation, the court would set the rules. Regarding the issue of whether the petitioner would have to register as a sex offender, trial counsel said,

> my recollection from the sentencing hearing was that [the trial judge] made that a condition of the probation, sort of regardless of whether or not it was mandatory. So no, I didn't tell him that it was definitely going to be part of probation if he got probation. I told him that . . . was part of what was going to be decided at the [sentencing hearing].

The petitioner, Jonathan K. Price, testified that he retained trial counsel to represent him in defense of several charges. He stated that he discussed the facts of the case with trial counsel from both his view and the state's view. According to the petitioner, trial counsel told him that the state's evidence was his DNA on the towel that the victim was wearing and the victim's mental condition. The petitioner said that he told trial counsel that the victim "wasn't going to be coming in and saying she's severely handicapped. She wasn't going to be rolling in on a wheelchair and on oxygen tanks and not being able to speak," which is what he thought trial counsel was implying.

The petitioner watched his recorded police statement with trial counsel, and he reviewed the victim's statement and medical records. The petitioner said that he and trial counsel did not discuss what the state had to prove to convict him. He said that trial counsel only told him the charges that the state filed against him and the time that the charges carried. The petitioner later testified that he only recalled discussing the statutory rape counts with trial counsel and said that he asked trial counsel "on several occasions how in the world [could the state] charge [him] multiple times for one act[.] And [trial counsel's] answer every time . . . was, they can do it." He stated that trial counsel never discussed a defense strategy or his constitutional rights with him.

The petitioner stated that he believed that the facts alleged by the state during the plea hearing were "very much" in error. When asked why he went through with his guilty plea, the petitioner answered,

> Because I had never been in trouble before. . . . I know that probably doesn't hold any water, but . . . I was just overwhelmed. Okay? Because I didn't . . . know I did anything wrong.

> When [trial counsel] came to me with the plea agreement that day in the room. . . that's when I was aware of the aggravated burglary. I was like . . . I'm not guilty of this. And he goes, I understand that . . . but just go ahead and agree to it because you'll get six years probation. He goes, you got . . . an excellent military record, you had a good work history, you have no criminal record. And at that time he knew I was financially broke. Okay? So he said, he goes, you won't have to spend any more money. All right. Which all made sense to me. He goes, if you accept this plea agreement, we'll go in there, I'll get diversion , and we'll argue the facts of the rape because . . . I don't think that applies.

The petitioner said that trial counsel did not tell him that he could enter a plea without pleading guilty. He said that when the judge asked him why he was pleading guilty he answered that his pleading guilty was all he and trial counsel had talked about. He said that "he didn't agree with it, but . . . [he] was [thirty] years old and . . . could do six years on probation." The petitioner did not think that he would have violated his probation because he served four years in the Marine Corps and thought serving six years on probation would be easier than his Marine Corps service.

The petitioner said that he asked trial counsel why he was going to plead guilty to crimes that he did not commit, and trial counsel told him to tell the judge that he was accepting the plea in his best interest. He stated that he did not know what a best-interest plea was and said that trial counsel told him that if he went to trial and the jury convicted him, the judge would sentence him to thirty years.

The petitioner testified that he entered the plea without knowing what a best-interest plea was and without knowing that the state was going to charge him multiple times for statutory rape because he thought that trial counsel was protecting his rights, but later realized it was a "facade." The petitioner said that trial counsel told him that he would take the case to trial if he wanted to "push it." However, he further said that trial counsel did not think it was a good idea to try the case and recommended that the petitioner take the plea. The petitioner stated that based on trial counsel's recommendation, he accepted the plea offer.

On cross-examination, the petitioner testified that he recalled telling the police that he did not go into the victim's home and rape her. He denied that the police found his DNA on the bed that the victim alleged the sex act occurred and said that the DNA was found on the towel that the victim was wearing when she flashed him. The petitioner stated that he did not see the victim's medical records, and the only record that he saw was related to when the victim had a conflict with her parents and attempted suicide.

The petitioner recalled that at the plea hearing the state said that the petitioner "agreed to plead to one count of aggravated burglary and to be sentenced as a standard 30 percent offender to [the Tennessee Department of Correction] for six years[.]" He also recalled the state announcing that he agreed to plead guilty to one count of solicitation of a minor. The petitioner testified that the state said something about the court's sentencing him to six years for the aggravated burglary and the other sentences running consecutive to the burglary sentence. The petitioner "vaguely" remembered the prosecutor saying that the petitioner wanted a sentencing hearing to ask for judicial diversion . The petitioner recalled that after the state announced the facts underlying the charges he told the judge that he agreed with them. He also recalled telling the judge that he had been placed under oath and that he understood that he had the right to not plead guilty, the right to an attorney, and the right to cross-examine witnesses on his behalf. He said that trial counsel told him the judge would ask all of those questions and that he was "just to go through the motions." The petitioner did not recall the trial judge going through each specific count of the indictment with him nor did he recall telling the judge that he understood the charges. He said that he only recalled the judge talking about the aggravated burglary charge.

The petitioner said that he had a copy of the transcript from his plea hearing, and he had an opportunity to review the transcript. He said that he did not disagree that he answered, "[Y]es, sir" when the judge asked if he understood the charges but said that he later realized that he was "ignorant" at the time. The petitioner agreed that he answered yes when the trial judge asked if he understood the maximum and minimum sentenced he could have received, the state's burden of proof and that he could have a sentencing hearing. He also agreed that he told the judge that he entered a plea of guilty because it was in his best interest but said that was what trial counsel told him to say. The petitioner told the trial judge that no one forced or coerced him into pleading guilty and that he was pleading guilty freely and voluntarily. The petitioner also told the trial judge that he "felt like he understood what [he was] doing." He recalled telling the judge that he wanted to plead guilty and that he was satisfied with trial counsel's representation.

The petitioner remembered the state questioning him at the plea hearing after the trial judge had questioned him. The petitioner admitted that he answered yes when the state asked him whether he understood the change in the statutory rape law and whether he and trial counsel discussed those changes. The petitioner also answered yes when the state asked him

whether he understood that "under the new law if you are not ten years older than the victim you would not be on the sexual registry." The petitioner remembered saying that he was more than ten years older than the victim, but he said that he and trial counsel discussed getting the victim's birth certificate to prove her age with trial counsel. At the plea hearing, the state asked the petitioner whether anyone promised him that he would not be on the sex offender registry, and the petitioner answered no. The petitioner was aware that he would possibly have to register as a sex offender.

The petitioner testified that he and his sister-in-law, who was in law school at the time of the plea hearing, discussed the petitioner's need to find evidence to contradict the state's theory of the case. He said that she had first called him after the indictment, and he had talked to her about his case three or four times. The petitioner admitted that he stated that he penetrated the victim with both his penis and finger. However, he testified that he only penetrated the victim digitally to facilitate the penile penetration.

On redirect examination, the petitioner testified that he would not have accepted the plea offer if he and trial counsel had gone over all of the elements of the crimes. He also testified that he would not have entered a best interest plea if he had understood what a best interest plea was.

After hearing the evidence, the post-conviction court took the case under advisement. On January 5, 2010, the post-conviction court entered a written order denying post-conviction relief. In its order, the court found that the petitioner failed to "show any error of his trial counsel" and denied the petitioner post-conviction relief. The petitioner appeals the court's denial of post-conviction relief.

**Analysis**

On appeal, the petitioner argues that trial counsel was ineffective for advising the petitioner "to plead guilty to charges [about] which [trial counsel] himself had serious misgivings." In addition, the petitioner claims that trial counsel did not properly advise him about his statutory rape and burglary charges. The state responds that the petitioner has failed to show that but for trial counsel's errors, he would not have pleaded guilty.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001)01). Our review

of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id*.

When determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). *See also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999)9). The reviewing court must look to various circumstantial factors, including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). In order for a guilty plea to be voluntary, the petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id*. at 905. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688. *See also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. *See also Nichols. v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove

prejudice. *Strickland*, 466 U.S. at 694. In relation to a guilty plea, the petitioner must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

Here, the petitioner argues that trial counsel did not properly advise him that the jury could convict him of two counts of statutory rape based on his two penetrations of the victim and that the facts at the plea hearing did not support the aggravated burglary charge. The post-conviction court found that the petitioner failed to put on proof to show that the facts in this case could not have resulted in two statutory rape convictions. The post-conviction court accredited trial counsel's testimony that he discussed the laws regarding rape with the petitioner. Trial counsel also testified that he had misgivings regarding the burglary charge because there was an issue of whether the victim had the capacity to consent. However, the state had an expert prepared to testify that the victim could not consent because of her mental status. The evidence does not preponderate against the post-conviction court's findings. The petitioner has failed to meet the burden of proving that his trial counsel's performance was deficient by clear and convincing evidence. There is no indication from the record that the performance of the petitioner's trial counsel did not meet an objective standard of reasonableness. Thus, the petitioner is not entitled to relief based on this issue.

The petitioner further argues that he did not knowingly and voluntarily enter his guilty plea. The evidence, however, suggests otherwise. Trial counsel stated that it was the petitioner's decision to plead guilty. At the plea hearing, the petitioner told the trial court that he understood the charges against him, the plea agreement, and the range of punishment for the offenses. The trial court asked the petitioner if he understood what he was doing, and the petitioner stated that he did. When asked if his plea was knowing and voluntary, the petitioner answered affirmatively. The petitioner, in declaring that his plea was knowing and voluntary, has created a formidable barrier that he has failed to overcome. Accordingly, we conclude that the petitioner is not entitled to post-conviction relief.

## Conclusion

Based on the forgoing reasons, we conclude that the petitioner's claim is without merit, and we affirm the denial of post-conviction relief.

_____
J.C. McLIN, JUDGE

-11-